UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA,

         v.                                            Docket No. 22 CR 352 (JSR)

JATIEK SMITH,

                Defendant.
-----------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JATIEK SMITH'S MOTION TO RECONSIDER ORDER DENYING SUPPRESSION AND IN THE ALTERNATIVE FOR  AN EVIDENTIARY HEARING**

Jill R. Shellow
Law Offices of Jill R. Shellow
15 Chester Avenue
White Plains, NY  10601
(212) 792-4911
jrs@shellowlaw.com

Andrew G. Patel
15 Chester Avenue
White Plains, NY  10601
(212) 349-0230
apatel@apatellaw.com

*Attorneys for Jatiek Smith*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**PRELIMINARY STATEMENT** ....................................................................... 1

**STATEMENT OF FACTS** ........................................................................... 2

**ARGUMENT** ……………….. ................................................................... 3

    I.    **The Fifth Amendment to the United States Constitution Protects Smith from Being Compelled to Produce the Password to the Cell Phone** ……. ............................................................... 3

        A.    <u>Smith's Interrogation at Newark Airport was Custodial</u>  ................................................ 3

        B.    <u>Smith Did Not Voluntarily Provide the Password to the Cell Phone to Law Enforcement Officials; Smith was Coerced</u>..................................... 6

        C.    <u>Smith's Act of Producing the Password was Testimonial and Protected by the Fifth Amendment</u> …. ................................................. 7

    II.    **Law Enforcement Agents Willfully Violated Smith's Fifth Amendment Rights and Prepared a False Report Of What Happened – Conduct That Should Not Be Excused By A Good Faith Exception** …………….. ....................................................... 9

**CONCLUSION** …………….. .................................................................................... 12

TABLE OF AUTHORITIES

Page

Cases

*Arizona v. Evans*, 514, U.S. 1, 14 (1995) ............................................................ 9

*Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) ................................. 8

*Colorado v. Connelly*, 479 U.S. 157, 170 (1986) ................................................. 6

*Doe v. United States*, 487 U.S. 201, 219 (1988) ("*Doe II*") ............................. 7, 8

*Fisher v. United States*, 425 U.S. 391, 409 (1976) .............................................. 7

*Green v. Scully,* 850 F.2d 894, 902 (2d Cir. 1988) ............................................. 6

*In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*,
    1 F.3d 87, 93 (2d Cir. 1993) ........................................................................... 8

*Lynumn v. Illinois,* 372 U.S. 528, 534 (1963) ..................................................... 6

*Matter of Decryption of a Seized Data Storage System*, 2013 WL
    12327372 at *4 (E.D. Wis. Apr. 19, 2013) ..................................................... 9

*Michigan v. Tucker*, 417 U.S. 433, 447 (1974) ................................................... 9

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ................................................... 4

*Riley v. California*, 134 S. Ct. 2473, 2485 (2014) .............................................. 8

*United States v. Anderson,* 929 F.2d 96, 99 (2d Cir.1991) ................................. 6

*United States v. Apple MacPro Computer*, 851 F.3d 238, 248 n.7 (3d Cir. 2017) ...................... 9

*United States v. Doe*, 465 U.S. 605, 612 n. 10 (1984) ("*Doe I*") ....................... 7

*United States v. FNU LNU*, 653 F.3d 144, 148, 153 (2d Cir. 2011) ................... 5

*United States v. Hubbell*, 530 U.S. 27, 36-37 (2000) ...................................... 7-8

*United States v. Leon*, 468 U.S. 897, 922 (1984)  ............................................................. 10

*United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992) ................................................... 5

*United States v. Pearson*, 2006 WL 8442594 at *18 (N.D.N.Y. May 24, 2006) ...........................9

*United States v. Santillan*, 902 F.3d 49, 60 (2d Cir. 2018)  .................................................. 5

*United States v. Smith*, No. 22-cr-352 (JSR), Dkt. # 219, 2023
    WL 3358357 at ** 13, 14, 20 n.3 (S.D.N.Y. May 11, 2023) ..................................2, 10, 11

*United States v Spencer*, 2018 WL 1964588 at *3 (N.D. Cal. Apr. 26, 2018)  .............................9

*United States v. Swanson*, 677 F.Supp.2d 1030, 1041 (N.D. Ill. 2009),
    *rev'd* 635 F.3d 995 (7th  Cir. 2011) .................................................................................10

## Other

Calvin Wankhere, *The History of Cell Phones:  A Decade-by-Decade* ...........................*Timeline*,
    ANDROID AUTHORITY, Jan 8, 2023 at
    https://www.androidauthority.com/history-of-cell-phones-timeline-3264425/
    (Last Visited on May 30, 2023) ......................................................................................8

Ivana Križanović, *Cell Phone History:  From the First
    Phone to Today's Smartphone Wonders*, VERSUS, Jan 12, 2023 at
    https://versus.com/en/news/cell-phone-history
    (Last visited on May 30, 2023)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,

            v.                                 Docket No. 22 CR 352 (JSR)

JATIEK SMITH,

                 Defendant.
------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JATIEK SMITH'S
MOTION TO RECONSIDER ORDER DENYING SUPPRESSION AND IN
THE ALTERNATIVE FOR AN EVIDENTIARY HEARING**


**PRELIMINARY STATEMENT**


On February 15, 2023, defendant Jatiek Smith moved this Court for an Order

suppressing evidence generated by the warrantless search of a cellular telephone in

Smith's possession at the U.S. border at Newark International Airport.  On March 17,

2023, this Court denied Smith's motion.  On May 11, 2023, this Court issued a written

Opinion and Order.  After careful consideration of the arguments, this Court concluded

that a warrant was required before searching the cellular telephone, but that the contents

of the phone and the fruits therefrom were not required to be suppressed because the

Customs and Border Patrol agents performed the search in good faith relying on agency

directives and because the Government ultimately secured a search warrant.

Smith moves this Court for reconsideration to complete the factual record that his

coerced surrender of the password for the telephone while in a custodial setting violated

his Fifth Amendment rights not to incriminate himself.[1]  As the facts set forth in Smith's Declaration demonstrate, Smith was not free to leave when he was subjected to interrogation by law enforcement officers.  Smith repeatedly refused to provide the password until he finally – in the face of a pretext – capitulated and provided the password.  Providing the password to law enforcement officers was a testimonial act protected by the Fifth Amendment.

The first two factors – the custodial setting and the voluntariness of the statement – are evaluated on the basis of a totality of the factual circumstances.  Accordingly, Smith respectfully requests that this Court conduct an evidentiary hearing to determine whether Smith's Fifth Amendment protections were violated and whether the contents of the cell phone and the evidence derived therefrom should be suppressed.

## STATEMENT OF FACTS

On March 2, 2021, Jatiek Smith traveled to Jamaica for a vacation and to meet members of his father's family who lived in Jamaica.  After initially authorizing Smith's entry, when Smith landed at Montego Bay, the Jamaican authorities refused to allow Smith to enter the country.  Smith was returned to Newark International Airport where

---

[1] As this Court observed in the Opinion, Smith did not argue that the interrogation at the airport was custodial and from the limited factual record supporting Smith's motion, the Court was unable to determine whether Smith was in custody at the time of the interrogation or whether Smith's divulging of the password was unwarned and coerced.  The Court nonetheless concluded that Smith's custodial status did not "require the exclusion of physical evidence obtained based on [his] unwarned but voluntary statements."  *United States v. Smith*, No. 22-cr-352 (JSR), Dkt. # 219, 2023 WL 3358357 at *20 n.3 (S.D.N.Y. May 11, 2023).  The Court left open, however, the possibility that Smith's coerced surrender of the password could require suppression.  *Id.*

his flight to Jamaica had originated. *See* Declaration of Jatiek Smith, June _____, 2023 ("Smith Decl. #2") at ¶ 4.

When Smith landed at the Newark airport, he was met by armed law enforcement officers wearing Customs and Border Patrol ("CBP") uniforms. *Id.* at ¶ 7. The officers escorted Smith into the large room where passports are processed in a defined area with a long table for the purpose to "check his stuff." *Id.* at ¶ 9. Approximately 10 heavily armed law enforcement officers were in strategic locations in the vicinity of the table. *Id.* at ¶ 9(c).

The agents searched Smith's carry-on and checked luggage and when Smith used the cell phone that had been in his carry-on satchel, he was instructed to put the phone into "airplane mode" and asked for the password. *Id.* at ¶ 9(d). Smith refused to provide the password. *Id.* at ¶¶ 9(e), 15. For approximately two hours, the agents tried to persuade Smith to relinquish the password for the phone. With each refusal, the interaction between Smith and the agents became more heated. The agents told Smith that he was being "detained," subjected to a border search and that he did not have any Fourth Amendment rights. *Id.* at ¶¶ 9(e), 11. The agents told Smith he had no choice but to surrender the password or he could be held without charge for as long as it took to open the phone. *Id.* at ¶ 9(e). A plainclothes officer told Smith that "the Patriot Act says I can hold you and I can search your phone. We don't need a warrant." *Id.* at ¶ 13. The plainclothes officer continued, "you can't go and you can't refuse our orders." *Id.* at ¶ 14(c). Smith asked to be permitted to call his lawyer and was told "you don't have a

right to a lawyer.  You're at the border." *Id.*  Smith responded "I am not consenting.  I am under duress.  You're forcing me to give you the password." *Id.* at ¶ 15.  The agents used the pretext of needing to search the phone for child pornography because Smith has a prior felony conviction for a sex offense and is on the New York Sex Offender Registry, *id.* at ¶ 4(e) n.1, and the pretext was especially persuasive.  Smith knew that there was no child pornography on the cell phone and so under duress he relented and provided the password to the agents.

## ARGUMENT

### I.  The Fifth Amendment to the United States Constitution Protects Smith from Being Compelled to Produce the Password to the Cell Phone

A.    Smith's Interrogation at Newark Airport was Custodial

Statements made during a custodial interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).[2] In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right. *Miranda v. Arizona*, 384 U.S. at 444.

As the Second Circuit has stated:

_____

[2] Unless otherwise noted, all internal quotation marks, alterations, omissions, emphases, and citations have been omitted from all cited sources.

> An interrogation consists of express questioning or its
> functional equivalent.... The overarching custody question is
> whether a reasonable person in the suspect's position would
> have understood himself to be subjected to restraints
> comparable to those associated with a formal arrest.

*United States v. FNU LNU*, 653 F.3d 144, 148, 153 (2d Cir. 2011).

In determining whether a defendant was in custody, the Second Circuit requires a

two-part analysis. First, the court must ask whether "a reasonable person in the

defendant's position would have understood that he or she was free to leave." *United*

*States v. Santillan*, 902 F.3d 49, 60 (2d Cir. 2018). If the defendant understood that he

was free to leave then that is the end of the inquiry.  If the reasonable person would not

have felt free to leave, the second step requires the Court to determine whether "there was

a restraint of freedom of movement akin to that associated with a formal arrest." *Id.*

"Decisions in this circuit have emphasized that in the absence of actual arrest, an

interrogation is not 'custodial' unless the authorities affirmatively convey the message

that the defendant is not free to leave." *United States v. Mitchell*, 966 F.2d 92, 98 (2d

Cir. 1992).  Among the factors used to evaluate the second inquiry are whether the

suspect was told that he was free to leave, the location and atmosphere of the

interrogation, the language and tone used by the law enforcement officers, and the length

of the interrogation.  *United States v. Santillan*, 902 F.3d at 60.

Smith's Declaration supplies answers to both inquiries.  Smith did not believe that

he was free to leave.  In fact, the agents told him that he was not free to leave.  Although

Smith was not arrested, law enforcement officers told Smith that he was "detained" and

his freedom of movement was curtailed the same as if he had been formally arrested.

      B.    <u>Smith Did Not Voluntarily Provide the Password to the</u>
           <u>Cell Phone to Law Enforcement Officials; Smith was Coerced</u>

The Supreme Court has observed that "[t]he sole concern of the Fifth Amendment

... is governmental coercion." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).  The issue

usually arises in the context of confessions, but Smith's statement is tantamount to a

confession as providing the password is testimonial (*see infra* at 7-9).  Thus, determining

whether Smith's statement was voluntary or coerced requires "a careful evaluation of the

totality of all the surrounding circumstances."  *United States v. Anderson,* 929 F.2d 96, 99

(2d Cir.1991); The  "most critical circumstance … is the law enforcement officers' conduct."

*Green v. Scully,* 850 F.2d 894, 902 (2d Cir. 1988).  Facts bearing on that conduct include the

repeated and prolonged nature of the questioning or the failure to inform the accused of his

constitutional rights.  The critical issue is whether law enforcement officers obtained

Smith's statement by "overbearing" Smith's will at the time that he made the statement.

S*ee Lynumn v. Illinois,* 372 U.S. 528, 534 (1963) ("the question in each case is whether

the defendant's will was overborne….").

Smith had been on an airplane for more than eight hours broken up only by the

interrogation by Jamaican authorities.  He was forced to return to the United States.  His

iPad battery had died and he could not sleep.  He had nothing to do but ruminate over the

unfairness of his aborted vacation.   He was exhausted and with each passing minute

became angrier.

Smith repeatedly told the CPB officers that he was not going to voluntarily provide the password.  The officers responded that they could lock him up without charges until they gained access to the cell phone and he would have no right to a lawyer. The final straw was the pretext used to justify searching the phone.  Smith was told that the reason that law enforcement wanted access to the cell phone was because they were searching for child pornography.  At the mention of child pornography, Smith was taken back to his 2005 conviction for a sex offense that has required him to register as a sex offender.  That offense was in his past and he wanted no possible association with child pornography.  Smith knew that there was no child pornography on the cell phone and so he provided the password, but under protest.  Given Smith's state of mind and criminal history, coupled with approximately 10 heavily armed officers, the pretext was overbearing and Smith succumbed to the pressure to provide the password.

C.    Smith's Act of Producing the Password was Testimonial and Protected by the Fifth Amendment.

Smith's act of producing the cell phone password violates his Fifth Amendment privilege not because the contents of the cell phone are protected, but rather because the act of producing the password "communicates testimonial aspects" as to the ownership and control of the cell phone.  The act of production doctrine dates back to the late 1980s. It was developed in the context of paper documents subpoenaed by the government.  *See, e.g., Fisher v. United States*, 425 U.S. 391, 409 (1976); *United States v. Doe*, 465 U.S. 605, 612 n. 10 (1984) ("*Doe I*"); *Doe v. United States*, 487 U.S. 201, 219 (1988) ("*Doe II*"); *see also United States v. Hubbell*, 530 U.S. 27, 36-37 (2000) (The "act of

-7-

production" doctrine has been recognized as protecting individuals from incriminating themselves by being compelled to produce documents where the production could implicitly communicate incriminating facts, such as the admission that "papers existed, were in the producing party's possession or control, and were authentic."); *United States v. Doe (Doe II)* 465 U.S., at 613, and n. 11.  At this time, cell phones were analog and weighed two pounds.[3]

In the Second Circuit, "the act of producing otherwise unprivileged documents in response to a subpoena may require incriminating testimony in two situations: (1) if the existence and location of the subpoenaed papers are unknown to the government; or (2) where production would implicitly authenticate the documents." *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993)

The act of production doctrine has yet to catch up with the modern jurisprudence related to cell phone technology.  *See Riley v. California*, 134 S. Ct. 2473, 2485 (2014); *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018).  There is a paucity of analyses in the case law discussing the act of production doctrine after *Riley* was decided, and no

---

[3] *See* Calvin Wankhere, *The History of Cell Phones:  A Decade-by-Decade Timeline*, ANDROID AUTHORITY, Jan 8, 2023 at https://www.androidauthority.com/history-of-cell-phones-timeline-3264425/.  (Last visited May 29, 2023).  For context, in 1990, there were approximately 11 million mobile phone users; by 2020 the number was closer to 2.5 billion.  Ivana Križanović, *Cell Phone History:  From the First Phone to Today's Smartphone Wonders*, VERSUS, Jan 12, 2023 at https://versus.com/en/news/cell-phone-history.  (Last visited on May 30, 2023).  The first flip phone was marketed in 1989, the same year that the first text message was sent by a cell phone.  The iconic Motorola StarTAC – the first clam-shell phone and the first phone to introduce vibration was marketed in 1996.  In 2007, Apple introduced the first iPhone, known as the iPhone 2G. *Id.*

binding authority in this Circuit.[4]  In this case the existence and location of the cell phone was known to the government, but Smith's provision of the password implicitly admitted control over the device.  His compelled production of the password to law enforcement was thus testimonial and in a custodial setting violated his Fifth Amendment privilege against self-incrimination.

## II.  Law Enforcement Agents Willfully Violated Smith's Fifth Amendment Rights and Prepared a False Report Of What Happened – Conduct That Should Not Be Excused By A Good Faith Exception

The purpose of the exclusionary rule is to deter misconduct by law enforcement officers.  *Arizona v. Evans*, 514, U.S. 1, 13-14 (1995).  "By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused."  *Michigan v. Tucker*, 417 U.S. 433, 447 (1974).  The willful

---

[4] *Compare United States v Spencer*, 2018 WL 1964588 at *3 (N.D. Cal. Apr. 26, 2018) (denying act of production protection to decrypting devices where the government was able to show by clear and convincing evidence that the defendant's ability to decrypt the devices was a foregone conclusion); *United States v. Apple MacPro Computer*, 851 F.3d 238, 248 n.7 (3d Cir. 2017) (holding that the defendant's Fifth Amendment protection was not violated where the foregone conclusion exception to the act of production doctrine applied because the Government knew the contents of the encrypted devices, but refusing to decide whether "knowledge of the password itself is sufficient to support application of the foregone conclusion doctrine") *with Matter of Decryption of a Seized Data Storage System*, 2013 WL 12327372 at *4 (E.D. Wis. Apr. 19, 2013) (concluding that requiring a defendant to use a password to decrypt a storage device "would be tantamount to telling the government something it does not already know with 'reasonably particularity' – namely that the defendant *has personal access to and control over* the encrypted storage devices) (emphasis in original); *United States v. Pearson*, 2006 WL 8442594 at *18 (N.D.N.Y. May 24, 2006) (where production of the password would "provide powerful evidence on the issue of authentication of the encrypted files …  the burden falls to the Government to demonstrate means to authenticate the files other than through the act of producing the password").

violation by law enforcement agents of Smith's Fifth Amendment rights is no different
from a willful violation of Smith's Fourth Amendment rights.  This Court found that the
good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 922 (1984),  saved
the warrantless search of the cell phone because the CPB officers relied on a 2018 CPB
policy directive and the Government subsequently obtained a search warrant for the
phone.  *United States v. Smith*, 2023 WL 3358357 at *13, *14.  These findings should not
apply to a denial of Smith's Fifth Amendment rights. [5]

      Law enforcement's coercion of Smith to produce the password alone is sufficient
to suppress Smith's statement and fruits derived from the statement.  In addition,
however, HSI agents misrepresented what took place at the Newark airport.  Exhibit A to
the Declaration of Jill R. Shellow, Esq., filed herewith, is the TECS – Secondary
Inspection Report that appears to have been prepared by a CPB agent, Sewnanand Singh,
when Smith was turned over to HSI to be interviewed.  The report states:

> During subjects [sic] interview he was being very evasive but
> was cooperating with CBP.  Subject was given a tear sheet
> and CBP explained the process while he was in the FIS area.
> CBP completed the baggage exam and subject was turn [sic]
> over to HSI for interview.  Subject became very apprehensive
> and requesting to call a Lawyer.  HSI agents tried to calm
> subject down but subject became louder. A DOMEX was
> done by HSI.  Subject was escorted out of the FIS while HSI
> conducted their DOMEX.  A phone exam was performed by

---

[5] In *United States v. Swanson*, 677 F.Supp.2d 1030, 1041 (N.D. Ill. 2009), *rev'd* 635 F.3d
995 (7th Cir. 2011), the district court opined that where the defendant's Fifth and Fourth
Amendment rights were not violated, the Court "need not resolve" whether the good faith
exception applied to Fifth Amendment violations.  The Seventh Circuit reversed without
discussing applicability of a good faith exception.

HSI.  *CBP at no time was in possession of SMITH phone.*[6]
Exhibit A (emphasis added).  Exhibit A is a misleading and unreliable account of CBP's detention of Smith.  At worst it is a misrepresentation. The agents that took the cell phone from Smith were from CBP.

Furthermore, Exhibit A not an isolated incidence of the Government's unreliable and/or misleading representations about Smith's detention at Newark airport.  *See United States v. Smith*, 2023 WL 3358357 at *2.  Exhibit B is a more complete account of what happened at Newark airport, the details of which Special Agent William Clark, Homeland Security Investigations, omitted from the factual recitation in his undated affidavit in support of the April 9, 2021 search warrant for Smith's phone.  *See* Exhibit C at USAO_323 – USAO_334 (filed under seal).[7]  An evidentiary hearing is necessary to resolve Smith's instant motion.

---

[6] Exhibit A utilizes undefined acronyms including but not limited to TECS, PIER, SCBPO, FIS, and DOMEX.

[7] Pursuant to the Protective Order, Exhibit C is being filed under seal.  The Government filed this affidavit under seal on March 1, 2023 with its opposition to Smith's original suppression motion.

**CONCLUSION**

For the foregoing reasons, this Court should suppress all evidence from the cell phone seized from Smith at Newark International Airport and evidence derived therefrom as the password to the cell phone was obtained in violation of Smith's Fifth Amendment right not to incriminate himself.  Alternatively, Smith requests that this Court hold an evidentiary hearing on the circumstances of Smith's interrogation and the Government's assertion that knowledge of the password was a foregone conclusion thus constituting an exception to the act of production doctrine.

Dated:          June 1, 2023

                                        Respectfully submitted,


                                         */s/ Jill R. Shellow*
                                        Jill R. Shellow
                                        Law Offices of Jill R. Shellow
                                        15 Chester Avenue
                                        White Plains, NY  10601
                                        (212) 792-4911
                                        jrs@shellowlaw.com

                                        Andrew G. Patel
                                        15 Chester Avenue
                                        White Plains, NY  10601
                                        (212) 349-0230
                                        apatel@apatellaw.com

                                        *Attorneys for Jatiek Smith*