


# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

July 28, 2023

<u>VIA ECF</u>

Hon. Jed S. Rakoff, U.S.D.C.J.
United States District Court – Southern District of New York
500 Pearl Street
New York, NY 10007-1312

In Re: United States v. Hasim Smith - 22-CR-352 (JSR)

Dear Judge Rakoff:

      I respectfully offer this submission on behalf of the Defendant, Hasim Smith ("Hasim") ahead of his sentencing later today, Friday July 28, 2023. I profusely apologize to the Court, the Government, the Probation Department and Hasim for not earlier filing the same. Despite the timing of the filing of the same, I nevertheless respectfully request that the Court accept, read and factor the same, in its decision as to what sentence to impose upon the Defendant.

## **THE INDICTMENT**

## **COUNT 1**

      On June 23, 2022, Hasim, along with eight (8) other Defendants, was indicted by a grand jury of Count One, Racketeering Con spiracy, under

      a.      Title 18, United States Code, Sections 1951 and 2 (relating to interference with commerce and extortion);

      b.      Extortion related provisions of state law, namely, New York Penal Law Sections 155. 05(2) (e) (larceny by extortion), 155.40(2) (grand larceny in the second degree by extortion); 155.30 (6) (grand larceny in the fourth degree by extortion); 105.10 (conspiracy in the fourth degree); 110. 00 (attempt to commit a crime); and 20.00 (accessory liability);

      c.      Title 18, United States Code, Sections 1343 and 2 (relating to wire fraud);

      d.      Title 18, United States Code, Sections 1341 and 2 (relating to mail fraud);

      e.      Title 18, United States Code, Sections 1512 and 2 (relating to tampering with a witness, victim, or an informant); and

 

# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

    f.     Title 18, United States Code, Sections 1503 and 2 (relating to obstruction of justice).

According to the Government, it was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise. *See Exhibit A, "Indictment" 1:22-cr-00352-JSR PACER Document 2, Page 8, Filed 06/23/22.*

## COUNT 2

    Hasim and the other defendants were also indicted of Count Two, Extortion Conspiracy wherein it was alleged that the defendants and other known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951 (b )(3), to wit, JATIEK SMITH, SEQUAN JACKSON, ANTHONY MCGEE, KAHEEN SMALL, DAMON DORE, HASIM SMITH, RAHMMIEK LACEWELL, MANUEL PEREIRA, and OCTAVIO PERALTA agreed to extort money and property from EMS companies and public. *See Exhibit A, Page 9.*

    The indictment, which alleges misconduct from in or about 2019 through June 2022[i], also contained forfeiture allegations relating to Counts 1 and 2 of the Indictment. *See Exhibit A, Pages 10-12.*

## *PROCEDURAL HISTORY*

    Hasim entered a plea of not guilty to all counts of the indictment and was remanded to custody where he remained until November 16, 2022, when he was released from custody over the objections of the Government, to home confinement on a personal recognizance bond. *See Exhibit B, November 9, 2022 Order, PACER Document No. 96.*

    It is worth noting here that at Hasim's Bond Hearing on November 7, 2022, the Government opposed Hasim's application for bond, alleging that witnesses were being intimidated. On said date the Court requested that the Government submit a letter providing information linking any actual, attempted or contemplated witness intimidation to Hasim Smith. In a letter addressed to the Court dated November 7, 2022, the Government reiterated the post

 

# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

indictment witness intimidation allegations and its concerns over pre-indictment incidents of alleged violence relating to the instant charges, that it articulated at the November 7, 2022 bond hearing. In response to Government and defense counsels' filings, the Court held that "the Government provides little detail linking these incidents to Mr. Hasim Smith". Accordingly, after careful consideration of all the relevant factors the Court concluded that the Government failed to show by clear and convincing evidence that "no conditions exist that will reasonably assure the safety of the community if Mr. Hasim is not detained. *See Exhibit B.*

On February 27, 2023, following extensive discussions between Hasim and myself and myself and the Government, relative to the terms of a possible plea agreement, notwithstanding my expressed reservations about the same, Hasim executed a plea agreement, wherein he agreed to plead guilty to Count Two of the Indictment. *See Exhibit C, "Plea Agreement".* Pursuant to the subject plea agreement, the parties stipulated that the defendant's stipulated sentencing guidelines range is fifty-one (51) to sixty-three (63) months of imprisonment. Hasim additionally admitted to the forfeiture allegations and agreed to make restitution in an amount ordered by the Court. Lastly, per the subject plea agreement, the parties additionally acknowledged that the sentencing guidelines are not binding on the Court and that the sentence to be imposed upon the Defendant is determined solely by the Court.

On March 14, 2023, in accordance with the terms of the subject plea agreement, Hasim changed his plea from "not guilty" as to all counts of the indictment to "Guilty" as to Count Two of the indictment.

On April 7, 2023, in response to Hasim's application for a modification of his bail conditions, the Court modified Hasim's bail conditions to allow him to leave his home for employment activities, medical appointments and legal meetings. *See Exhibit D, April 7, 2023 Order, PACER Document No. 198.* Following the Court's modification of his bail conditions the Defendant has been employed continuously working in maintenance at "The Brielle At Seaview", an assisted living facility which approximately one hundred and twenty (120) elderly persons call home. In a letter dated July 10, 2023, the Business Office Manager and Human Resources Director, Jazmine Warren provides a compelling narrative of Hasim's employment at the facility stating inter alia, "He goes above and beyond to care about not only this facility, but most importantly the elderly residents who live here. I can't stress enough how genuine, gentle and caring Hasim is with everything and everyone". *See Exhibit E, July 10, 2023 Letter from Employer.*

In addition to working at the above-referenced employer on a full-time basis, which at times involved working seven days per week over three consecutive weeks, the Defendant has also worked on an as needed basis at "SI Fish and More", a restaurant located in Staten Island. Moreover, from March 27, 2023 though June 12, 2023 Hasim was enrolled in The Focus




# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

Forward Project Class, a twelve week course designed to provide an educational and emotional outlet for students as they navigate the stress and uncertainty of the pre-trial phase of their federal cases. *See Exhibit F, July 11, 2023 Letter from the Focus Forward Program.* Per Hannah Jopling and Anastasia Velikovskaya, Focus Forward Class Facilitators, Hasim who was selected to be the class speaker at the Focus Forward Program's June 29, 2023 graduation, has been an exceptional participant in his Focus Forward group and his classmates have benefited from his presence each week.

As noted in the pre-sentencing report, U.S. Pre-Trial Officer Francesca Piperato has confirmed that Hasim has to date complied with the conditions of his bail.

The government's sentencing submission and the probation department's pre-sentencing report, in so far and to the extent that it relies on information derived from allegations made by the government, paint an incomplete, one sided, self- serving and by definition, therefore inaccurate narrative of Hasim Smith on the basis of which the probation department recommends that the Court sentence Hasim to forty two (42) months in prison and the government recommends that the Court sentence Hasim to sixty (60) months in prison.

Contrary to the government's representations in its sentencing submission and the probation department's pre-sentencing report:

(a) Hasim is not a member of the BLOODS gang or any other gang (self-professed or otherwise) and the government's allegation, parroted in the probation report, is nothing more than a naked allegation.

As evidenced in the Probation Department's inventory of Hasim's tattoos, Hasim bears no tattoos indicative of gang affiliation to the BLOODS or any other gang.

Moreover, Hasim, who has in the past served time, has never been the subject of disciplinary action while serving time, on the basis of any alleged gang related affiliation. While there are no universal truths, persons who are gang affiliated and serving time will invariably become the subject of institutional disciplinary action by correctional authorities, what is commonly referred to as a "gang ticket" for gang related activity and it is common knowledge that you can't claim being part of a gang or set if you are unwilling to claim membership in the gang/set or put in work in furtherance of the interests of said gang/set that typically yields gang tickets. Hasim Smith has not incurred any gang tickets and the government can't produce evidence to the contrary. There is also no evidence and the government can't therefore produce any, of Hasim professing membership or allegiance to the BLOODS or any other gang;

(b) The alleged March 19, 2020 text exchange between Jatiek Smith and Hasim wherein

4

   THE NDLC LAW FIRM, PLLC   

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

Hasim purportedly reported to Jatiek Smith that he (Hasim) was having issues with a rival EMS company that was getting in his way at the scene of a fire, telling Jatiek Smith, "Son this fat emergency service nigga getting me tight dick riding right here." In response, Jatiek Smith told Hasim Smith to "Bring it down." and the October 25, 2020 text exchange wherein Hasim purportedly asked Jatiek Smith whether they needed to send "Another sign [flexed arm emoji]," i.e., another show of force. or the October 28, 2020 purported instruction to Hasim, during another fire, to "Act like police." are subject to multiple interpretations and not probative of aggressive tactics much less conduct by Hasim Smith constituting evidence of the Extortion Conspiracy that Hasim plead guilty to;

(c) Hasim was not involved in the alleged May 5, 2020 attack on an owner of Company -1 or any other company or any other employee of any other company. Not only did Hasim not punch anyone, Hasim was in fact not even at the scene of the alleged May 5, 2020 assault. To the best of his recollection, he was approximately two blocks away at the scene of a fire. Hasim did however learn two days later, pursuant to a conversation with another First Response employee, that there was an incident between First Response and another company's employee as a result of the other company's employee seeking to sway fires away from First Response by speaking negatively of First Response and its employees;

(d) May 5, 2020 text messages from Jatiek Smith to several First Response employees purportedly instructing his crew—including Hasim Smith—that they are "all gonna pull up tonight," and to not to go straight to the scene of the fire, but instead to "circle the area first until another one of us gets there." and "Bring your first response stuff and your black out stuff" is not probative of an act committed by Hasim in furtherance of the Extortion Conspiracy that Hasim plead guilty to;

(e) Hasim Smith was not present On October 18, 2021, when co-defendant Sequan Jackson allegedly ordered co-defendant Damon Dore to have a construction worker assaulted because he was said to have disrespected First Response and Jatiek Smith. Hasim arrived to the subject fire and did not participate in assaulting or intimidating anyone at that fire on that date.

(f) The government's assertion that "Hasim Smith was one of Jatiek Smith's trusted soldiers who carried out acts of violence at Jatiek Smith's behest" is not supported by any legally sufficient evidence showing that Hasim carried acts of violence at Jatiek's or anyone else's behest. Hasim does not dispute that Jatiek is his biological brother or that Jatiek was in fact a decision maker, along with Carl Walsh at First Response. As a practical matter though, Hasim reported directly to Sequan Jackson as an employee of First Response.

(g) Similarly, the government's assertion that "Hasim Smith's willingness to use of




# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

violence (sic) was a key factor in Smith's ability to take control over the fire restoration industry is also inaccurate in so far as the government cites no evidence of Hasim's willingness to use violence. Moreover, the assertion that First Response "took over" the fire restoration industry is an overstatement of First Response's place in the industry not supported by any objective evidence of the industry before and after the subject conspiracy.

(h)  The government's assertion, in furtherance of its request that the Court sentence Hasim to sixty (60) months in prison, that at the time of the instant offense, Hasim was on parole from a 2016 conviction for manslaughter, for which he served just under four years in prison lacks context which operates to Hasim's detriment. The facts are that while operating a vehicle at a high rate of speed without a license, the vehicle he was operating entered an intersection when the light was turning from yellow to red and was in imminent danger of a head on collision with a vehicle coming from the opposite direction. In an effort to avoid a head on collision, Hasim made a life altering, split-second decision to swerve the vehicle he was operating which resulted in said vehicle crashing into a light pole and a friend losing her life and another getting injured. Hasim doesn't dispute driving without a license. He was then 21 years of age and had until that day had a history of driving licensure-related violations of the law that he is now not proud of. He admits then accelerating in order to clear the intersection before the yellow light turned red. In all probability, had he elected not to swerve the car as he did, there would have been more than one fatality than that of his friend Alize Jorge, including his own.

It is also relevant to Hasim's punishment for the above-referenced crime that Hasim accepted said plea deal as part of an effort to concurrently resolve a separate indictment for Conspiracy in the 5th degree stemming from his June 3, 2014 arrest for conspiring with others including Jatiek Smith and Rahmiek Lacewell, co[defendants in the instant case, to receive package and distribute cocaine, wherein he was specifically accused of participating in a September 5, 2013 sale of cocaine.

It is particularly worth noting that Hasim's last criminal convictions took place on August 19, 2015 when he accepted the above referenced plea deal and concurrent sentence. He was 23 years of age at the time as compared to his current age of 30. He served until January 21, 2020, much less than the 54 months to nine years he could have served had he not complied with the conditions imposed upon him. It is further worth noting that the New York State Department of Corrections and Community supervision records state that the defendant tested negative for all substances, was employed and was compliant while under parole supervision. As a result of Hasim's compliance, he was discharged from Parole on January 21, 2021, via a a merit termination.  As further testament to Hasim's redeemability, despite a past history of unlicensed operation of a vehicle as a youth and the previously referenced vehicular manslaughter conviction, upon his release from prison in January 2020 Hasim successfully advocated for the restoration of the privilege to be licensed to drive a vehicle.

6

 

# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

## APPLICABLE LAW

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker,* 543 U.S. 220 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them 'into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a)(1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

   • to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   • to afford adequate deterrence to criminal conduct;

   • to protect the public from further crimes of the defendant;

   • to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. These considerations weigh in favor of a sentence of no more than timer served to 24 months' imprisonment, one year supervised release, and a $100 assessment.




# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

In the instant case, the Court's analysis of the nature and seriousness of the offense committed by Hasim Smith is complicated by the dearth of substantive evidence offered by the government in support of its assertions outlined above alleging in sum and substance that Hasim Smith was present at acts of violence he was not present at; participated in acts of violence that he did not participate in; carried out acts of violence at the behest of Jatiek Smith when he in fact did not; and that Hasim's willingness violence (sic) to use violence was a key factor in Smith's ability to take control over the fire restoration industry while offering nothing more than the naked allegation that Hasim was willing to use violence and zero objective evidence of the pre and post conspiracy effects of the subject conspiracy on the subject industry. In the abstract then it is undisputed that conspiring to commit extortion is a serious matter meriting punishment but as applied to Hasim Smith, his conduct simply doesn't rise to a level meriting the sentences proposed either by the government or the U.S. Probation Department.

The Courts imposition of a sentence as to Hasim Smith that promotes a respect for the law and is just and fair should take into consideration that the vast majority of Hasim's criminal history took place before the Defendant was 22 years of age and he is now 30 years of age and the father of a two year old daughter named Ella Smith; that when the Defendant has been incarcerated, he has as a result of his compliance with conditions imposed on him and good behavior, been released from custody or parole significantly ahead of the scheduled timeframes; and that the Defendant has during the pendency of the instant case been release on bail and complied with all conditions imposed upon him by the Court. In connection with this analysis, the Court should consider several letters written to the Court on behalf of Hasim and attached hereto as *Exhibit G*, by people who have known Hasim and can provide the Court perspective including Eleanor Dixon, the mother of their child who has known Hasim since 2011, Naholyta Levasseur, who has known Hasim and Eleanor for eight (8) years, Kashayla Jackson, who has known Hasim for twelve years and Leon Saunders who has known Hasim for twelve years and is a friend, former employer and mentor to Hasim, all of which can provide a more complete picture of the Defendant than the government and its agencies are otherwise willing[ii] or able to offer. The Hasim Smith of today is not the violent felon the government paints him to be, He is a loving dad of a 2 year old little girl, burdened by the weight of the poor choices of his youth and family ties that as a result of the same have placed him once again in the cross hairs of law enforcement, who upon his release January 2020 release from prison for his 2015 vehicular manslaughter conviction, accepted legitimate employment with First Response signing up victims of fires for services, did not personally engage in any acts of violence in furtherance of the extortion conspiracy but out of necessity and preservation of employment, turned a blind eye to acts of intimidation and violence conducted by others in furtherance of his employer's business. Frankly, in this humble servant's opinion, a just and fair resolution in this case would be the imposition of a sentence of time served to 24 months with no more than a year of supervised released and a $100 assessment. Such a sentence would not only be just and fair based on the dearth of evidence offered by the government as to specific acts of violence

 

# THE NDLC LAW FIRM, PLLC

3542 Eastchester Road
Bronx, New York 10469

Tel. No.: 646. 973.0812
Fax No.: 347.402.0214
Email: nelson@ndlclawpllc.com

committed by Hasim, it more than satisfies the need for sentences to serve as a deterrent to further criminal conduct by the Defendant and protect the public from the same. Hasim Smith is now older and more mature than the young man he was when he engaged in the conduct that is the basis of criminal history.

As a doting dad, Hasim is focused on being around to raise his daughter and otherwise enjoy his life with long term girlfriend Eleanor. Notwithstanding his past criminal history, he poses very little risk of re-offending and no danger to the public.

For the reasons set forth herein, as counsel for Defendant Hasim Smith, I respectfully request that the Court impose a sentence upon the Defendant, below the Stipulated Guidelines Range and the sentence lengths recommended by the U.S. Probation Department and the government. More specifically, I respectfully that the Court sentence Hasim Smith to a period of incarceration ranging from time to 24 months. 1 year of supervised release and a $100 assessment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully,

Nelson De La Cruz, Esq./s/

Cc: Mr. Hasim Smith
     United States' Attorney's Office
     Francesca Piperato, Pre-Trial Detention

---

[i] The Court should take notice that while the indictment alleges that the parties were engaging in the subject criminal conduct since 2019, Hasim wasn't released from prison where he was serving time for his 2015 vehicular manslaughter plea until January 21, 2020 and didn't start working for First Response until March of 2020 and cannot therefore be factually tied to any conduct pre-dating his release from prison or employment by First Response.

[ii] The U.S. Probation Report relative to Hasim Smith is rife with conduct attributable to Jatiek Smith but conflated to ascribe the same to Hasim Smith via the use of the shorthand "Smith" in multiple instances where acts of violence and intimidation are discussed. The Court should guard in making a determination about Hasim's personal involvement in violence, that he doesn't ascribe conduct to Hasim Smith allegedly committed by Jatiek Smith simply because U.S. Probation was not more careful in describing which "Smith" they were referring to in each instance and the government has since the onset of the case ascribe conduct to Hasim allegedly committed by Jatiek or other co-defendants.

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
                                     :
UNITED STATES OF AMERICA             :   INDICTMENT
                                     :
          - v. -                     :   22 Cr. _____
                                     :
JATIEK SMITH,                        :
     a/k/a "Tiek,"                   :
SEQUAN JACKSON,                      :          22 CRIM 352
     a/k/a "Supa,"                   :
ANTHONY MCGEE,                       :
     a/k/a "Touch,"                  :
KAHEEN SMALL,                        :
     a/k/a "Biz,"                    :
DAMON DORE,                          :
     a/k/a "Demo,"                   :
HASIM SMITH,                         :
     a/k/a "Hoodie,"                 :
RAHMIEK LACEWELL,                    :
     a/k/a "Ready,"                  :
MANUEL PEREIRA,                      :
     a/k/a "Manny," and              :
OCTAVIO PERALTA,                     :
                                     :
          Defendants.                :
                                     :
- - - - - - - - - - - - - - - - - - X

COUNT ONE
(Racketeering Conspiracy)

The Grand Jury charges:

Overview

1.   From in or about 2019, up to and including in or about June 2022, JATIEK SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a "Supa," ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a

1

"Biz," DAMON DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie,"
RAHMIEK LACEWELL, a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny,"
and OCTAVIO PERALTA, the defendants, and others known and
unknown, corrupted the operations and activities of First
Response Cleaning Corp. and other related corporate entities
(collectively, "First Response").  First Response is an
emergency mitigation services ("EMS") company, which provides
clean-up services to properties damaged by fire.  The defendants
and their co-conspirators used First Response as a vehicle to
extort other EMS companies, to extort other participants in the
fire restoration industry, and to assert control over the
industry using violence and threats of violence.

Relevant Background

2.    When properties suffer fire damage, property
owners often hire an EMS company to clean up the damaged
property, which includes sweeping up, removing debris, and
ventilating the property.  Adjusters are another component of
the fire restoration industry.

3.    Property owners typically rely upon adjusters,
either a "public adjuster" or an "independent adjuster," to
investigate, process, and submit the insurance claims to their
insurer.  A public adjuster acts on behalf of the property owner
in negotiating the settlement of a claim for loss or damage with

the insurance company. A public adjuster is paid by the property owner with a percentage of the settlement paid out by the insurer on the insurance claim, and is an independent contractor licensed by the state. By contrast, an independent adjuster works for, and is paid by, the insurer to investigate and adjust claims arising under insurance contracts issued by the insurer.

4. EMS companies compete to sign projects (or "losses") by approaching a property owner directly. One way EMS companies compete for work is by arriving on the scene of a fire soon after it has occurred, which is sometimes called "chasing a fire." If a property owner hires a particular EMS company, the EMS company will often make a referral for a particular public adjuster to process the associated insurance claim.

5. Public adjusters similarly compete to sign losses by approaching the property owner, and, in turn, make referrals for EMS companies to work for the property owner.

The Enterprise

6. From in or about 2019, up to and including in or about June 2022, JATIEK SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a "Supa," ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz," DAMON DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK LACEWELL, a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny," and OCTAVIO PERALTA, the defendants, and others known and

3

unknown, were members and associates of a criminal organization
(the "Enterprise") whose members engaged in, among other things,
extortion, wire fraud, mail fraud, witness tampering, and
obstruction of justice.

       7.   The Enterprise, including its leadership,
membership, and associates, constituted an "enterprise," as
defined by Title 18, United States Code, Section 1961(4), that
is, a group of individuals associated in fact, although not a
legal entity. The Enterprise constituted an ongoing
organization whose members functioned as a continuing unit for a
common purpose of achieving the objectives of the Enterprise.
At all times relevant to this Indictment, the Enterprise was
engaged in, and its activities affected, interstate and foreign
commerce. The Enterprise operated in the Southern District of
New York and elsewhere.

       8.   JATIEK SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a
"Supa," ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz,"
DAMON DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK
LACEWELL, a/k/a "Ready," MANUEL PEPEIPA, a/k/a "Manny," and
OCTAVIO PERALTA, the defendants, participated in the operation
of the Enterprise, and participated in unlawful and other
activities in furtherance of the conduct of the Enterprise's
affairs.

Purposes of the Enterprise

9.   The purposes of the Enterprise included the
following:

a.   Enriching the members and associates of the
Enterprise through, among other things, extortion;

b.   Preserving and protecting the power of the
Enterprise, including the power of its leader, JATIEK SMITH,
a/k/a "Tiek," the defendant, through violence and threats of
violence;

c.   Promoting and enhancing the Enterprise and
the activities of its members and associates;

d.   Exerting control over the participants in
the fire mitigation industry; and

e.   Protecting the Enterprise and its members
and associates from detection and prosecution by law enforcement
authorities through acts of intimidation and violence and with
threats of retaliation against individuals who witnessed the
crimes committed by members and associates of the Enterprise.

Means and Methods of the Enterprise

10.   Among the means and methods by which JATIEK
SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a "Supa," ANTHONY
MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz," DAMON DORE,
a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK LACEWELL,

5

a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny," and OCTAVIO

PERALTA, the defendants, and others known and unknown, conducted

and participated in the conduct of the affairs of the Enterprise

were the following:

   a. Imposing a system of rules upon other EMS

companies and on public adjusters.

   b. Extorting money from employees and owners of

EMS companies.

   c. Extorting money from public adjusters.

   d. Using threats of force and intimidation

against EMS companies and public adjusters, such as threatening

to kill or shoot victims and members of their family.

   e. Using force against other EMS companies and

public adjusters to ensure that they submitted to the rules set

by the Enterprise, such as hitting, kicking, and/or punching

victims and, on at least some occasions, with multiple members

of the Enterprise participating in the acts of violence.

   f. Creating video recordings of acts of

violence committed against employees and owners of EMS companies

and against public adjusters in order to threaten other victims.

   g. Concealing or altering circumstances of fire

damaged properties, or falsifying insurance claims related to

fire damaged properties, to ensure reimbursement from insurance

companies.

        h.   Threatening violence or retaliation against potential witnesses to their crimes in order to deter cooperation with a law enforcement investigation.

<u>The Racketeering Conspiracy</u>

        11.  From at least in or around 2019, up to and including in or around June 2022, in the Southern District of New York and elsewhere, JATIEK SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a "Supa," ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz," DAMON DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK LACEWELL, a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny," and OCTAVIO PERALTA, the defendants, and others known and unknown, being persons employed by and associated with the Enterprise described in Paragraphs One through Ten of this Indictment, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of multiple acts:

a.    indictable under Title 18, United States Code, Sections 1951 and 2 (relating to interference with commerce and extortion);

b.    involving extortion, chargeable under the following provisions of state law, namely, New York Penal Law Sections 155.05(2)(e) (larceny by extortion), 155.40(2) (grand larceny in the second degree by extortion); 155.30(6) (grand larceny in the fourth degree by extortion); 105.10 (conspiracy in the fourth degree); 110.00 (attempt to commit a crime); and 20.00 (accessory liability);

c.    indictable under Title 18, United States Code, Sections 1343 and 2 (relating to wire fraud);

d.    indictable under Title 18, United States Code, Sections 1341 and 2 (relating to mail fraud);

e.    indictable under Title 18, United States Code, Sections 1512 and 2 (relating to tampering with a witness, victim, or an informant); and

f.    indictable under Title 18, United States Code, Sections 1503 and 2 (relating to obstruction of justice).

12.   It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

8

(Title 18, United States Code, Section 1962(d).)

COUNT TWO
(Extortion Conspiracy)

The Grand Jury further charges:

13.  From in or about 2019, up to and including at least in or about June 2022, in the Southern District of New York and elsewhere, JATIEK SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a "Supa," ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz," DAMON DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK LACEWELL, a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny," and OCTAVIO PERALTA, the defendants, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, JATIEK SMITH, JACKSON, MCGEE, SMALL, DORE, HASIM SMITH, LACEWELL, PEREIRA, and PERALTA agreed to extort money and property from FMS companies and public

adjusters.

(Title 18, United States Code, Section 1951.)

FORFEITURE ALLEGATION AS TO COUNT ONE

14.   As a result of committing the offense alleged in Count One of this Indictment, JATIEK SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a "Supa," ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz," DAMON DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK LACEWELL, a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny," and OCTAVIO PERALTA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendants acquired or maintained in violation of Title 18, United States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, the offense alleged in Count One of this Indictment, including but not limited to a sum of money in United States currency representing

10

the amount of proceeds traceable to the commission of the offense alleged in Count One.

FORFEITURE ALLEGATION AS TO COUNT TWO

15.    As a result of committing the offenses alleged in Count Two of this Indictment, JATIEK SMITH, a/k/a "Tlek," SEQUAN JACKSON, a/k/a "Supa," ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz," DAMON DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK LACEWELL, a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny," and OCTAVIO PERALTA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

Substitute Assets Provision

16.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited

11

with, a third person;

c.   has been placed beyond the jurisdiction of the

Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p); Title 18, United States

Code, Section 1963(m); and Title 28 United States Code, Section

2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982, and 1963;
Title 21, United States Code, Section 853; and Title 28, United
States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

12

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JATIEK SMITH, a/k/a "Tiek," SEQUAN JACKSON, a/k/a "Supa,"
ANTHONY MCGEE, a/k/a "Touch," KAHEEN SMALL, a/k/a "Biz," DAMON
DORE, a/k/a "Demo," HASIM SMITH, a/k/a "Hoodie," RAHMIEK
LACEWELL, a/k/a "Ready," MANUEL PEREIRA, a/k/a "Manny," and
OCTAVIO PERALTA,

Defendants.

INDICTMENT

22 Cr. _____

(18 U.S.C. §§ 1962, 1951, and 2.)

DAMIAN WILLIAMS
United States Attorney

A TRUE BILL

_____
Foreperson

6/23/22 Filed Indictment under seal. Arrest warrants issued.

Valerie Figueredo
US MJ

13

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA,

          -v-

HASIM SMITH ET AL.

          Defendants.
```

22-cr-352 (JSR)

ORDER

JED S. RAKOFF, U.S.D.J.:

Defendant Hasim Smith moves for reconsideration of this Court's July 5, 2022 detention order. After hearing argument on defendant's motion on Friday, November 7, 2022, the Court requested both sides to submit letters. The Court specifically requested the Government to provide information linking any actual, attempted, or contemplated witness intimidation to Hasim Smith. In its letter, the Government reiterated concerns it articulated at the November 7, 2022 hearing that other members of Hasim Smith's family may have improperly contacted witnesses. However, the Government has not provided any information tying such alleged witness intimidation to Hasim Smith, and as one of Mr. Smith's brothers (Jatiek Smith) is also a defendant in this case, the Court does not believe there is sufficient evidence to attribute any of the allegations regarding contact with witnesses to Mr. Hasim Smith, absent some more particular showing by the Government.

1

The Government also reiterates concerns raised during the November 7, 2022 hearing regarding incidents of alleged violence related to the instant charges. However, the Government provides little detail linking these incidents to Mr. Hasim Smith. The most disturbing incident raised by the Government -- also discussed during the November 7 hearing -- involved several armed individuals allegedly intimidating employees of a rival company and apparently taking a picture of one victim's identification card in order to discourage him from going to the police. However, to link this event to Mr. Hasim Smith, the Government refers only to "cellphone geolocation data" that supposedly places Mr. Hasim Smith in the vicinity of the incident, and to witness testimony that the car used by assailants was of the same color and make as a car used by Mr. Hasim Smith at the time. The Government does not respond to concerns raised by defense counsel at the November 7 hearing that such cellphone geolocation data provides, at best, imprecise information as to a person's general location, or offer any witness testimony specifically placing Mr. Hasim Smith at the scene.

Although it is a close call, the Court, after consideration of all the relevant factors, see 18 U.S.C. § 3142(g), concludes that the Government has failed to show by clear and convincing evidence that no conditions exist that will reasonably assure the safety of the community if Mr. Hasim Smith is not detained. See 18 U.S.C. § 3142(f)(2)(B). Instead, the Court finds that there are conditions that will reasonably assure the safety of the community and Mr. Hasim Smith's appearance on trial. The Court accordingly orders Mr. Hasim

Smith released on a personal recognizance bond of $250,000 to be secured by three financially responsible persons. His release shall be subject to the following conditions:

- Home incarceration at the residence of Shatasia Smith, Mr. Hasim Smith's sister, to be subject to full electronic monitoring. Defendant shall not be allowed to leave the place of home incarceration except for necessary meetings with counsel or medical appointments, and only then with the express pre-approval of Pretrial Services. Any (pre-approved) travel shall be restricted to the Southern and Eastern Districts of New York.

- Defendant is to have no contact with any members of the Bloods gang, any defendant in this case (except through counsel) -- including his brother, Jatiek Smith, anyone convicted of or who has pending criminal charges against them, or any EMS companies, public adjustors, or their employees.

- Defendant shall surrender any passport or other travel documents to Pretrial Services, and shall not obtain any new passport or any international travel document.

- Defendant shall not possess a firearm, destructive device, or other weapon.

3

- Defendant shall submit to periodic drug tests as determined by Pretrial services, and, if any of the results are positive, to appropriate treatment.

SO ORDERED.

New York, NY
November 9, 2022

_____
JED S. RAKOFF, U.S.D.J.

4

# EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 23, 2023

**BY EMAIL**
Nelson De La Cruz
The NDLC Law Firm, PLLC
3542 Eastchester Road
Bronx, New York 10469
nelson@ndlclawpllc.com

     Re: *United States v. Hasim Smith*, 22 Cr. 352 (JSR)

Dear Counsel:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Hasim Smith ("the defendant") to Count Two of the above-referenced Indictment.

Count Two charges the defendant with extortion conspiracy, in violation of Title 18, United States Code, Section 1951(a), and carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution as specified below.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for participating in an extortion conspiracy from in or about 2019 through June 2022, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges the defendant is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count Two of the Indictment and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c) a sum of money representing proceeds traceable to the commission of said offense. It is further understood that

2022.12.14

any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

The defendant further agrees to make restitution in an amount ordered by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664. The defendant further agrees that the obligation to make such restitution shall be made a condition of probation, *see* 18 USC §3563(b)(2), or of supervised release, *see* 18 USC §3583(d), as the case may be.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The November 1, 2021 edition of the Guidelines Manual applies.

2. The Guideline applicable to Count Two is U.S.S.G. § 2B3.2. Pursuant to U.S.S.G. § 2B3.2(a), the base offense level is 18.

3. Pursuant to U.S.S.G. §§ 2B3.2(b)(2) and 2B3.1(b)(7)(B), because the amount demanded or the loss to the victim was greater than $20,000 but less than $95,000 a one-level increase is warranted.

4. Pursuant to U.S.S.G. § 2B3.2(b)(4)(A), because a victim sustained a bodily injury, a two-level increase is warranted.

5. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 18.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has 11 criminal history points, calculated as follows:

1.   On or about March 1, 2016, the defendant was convicted of manslaughter, in violation of New York Penal Law 125.15(1), in Richmond County Supreme Court.[1]   On or about April 7, 2016, the defendant was sentenced to a term of imprisonment of 54 months to 9 years.   Pursuant to U.S.S.G. § 4A1.1(a), three criminal history points are added.

2.   On or about March 1, 2016, the defendant was convicted of reckless endangerment, in violation of New York Penal Law 120.25, in Richmond County Supreme Court.[2]   On or about April 7, 2016, the defendant was principally sentenced to two to four years' imprisonment. Pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(a)(2) and (b)(1), three criminal history points are added.

3.   On or about March 1, 2016, the defendant was convicted of conspiracy, in violation of New York Penal Law 105.05(1), in Richmond County Supreme Court.[3]   On or about April 7, 2016, the defendant was principally sentenced to a term of imprisonment of one year.   Pursuant to U.S.S.G. §§ 4A1.1(b) and 4A1.2(a)(2), two criminal history points are added.

4.   On or about April 10, 2014, the defendant was convicted of two counts reckless driving, in violation of New York Vehicle Traffic Law 1212., in Richmond County Criminal Court.   The defendant was principally sentenced to a conditional discharge and 10 days of community service. Pursuant to U.S.S.G. § 4A1.2(c)(1), no criminal history points are added.

5.   On or about November 16, 2013, the defendant was convicted of attempted grand larceny, in violation of New York Penal Law 155.25(1), in Richmond County Supreme Court.   On or about January 16, 2014, the defendant was principally sentenced to an order of protection and a 90-day term of imprisonment.   Pursuant to U.S.S.G. § 4A1.1(b), two criminal history points are added.

6.   On or about February 6, 2013, the defendant was convicted of reckless driving, in violation of New York Vehicle Traffic Law 1212, in Richmond County Criminal Court.   The defendant was principally sentenced to a conditional discharge and five days of community service.   Pursuant to U.S.S.G. § 4A1.2(c)(1), no criminal history points are added.

7.   On or about February 6, 2013, the defendant was convicted of attempted petit larceny, in violation of New York Penal Law 155.25, in Richmond County Criminal Court. The defendant was principally sentenced to a conditional discharge, restitution, and an order of protection. Pursuant to U.S.S.G. § 4A.1.1(c), one criminal history point is added.

In accordance with the above, the defendant's Criminal History Category is V.

---

[1] The offense occurred on July 26, 2015, and the defendant was arrested for the offense on July 27, 2015.

[2] This offense occurred on June 16, 2014, and the defendant was arrested for this offense on June 9, 2004.

[3] This offense occurred on June 3, 2014, and the defendant was arrested for this offense on June 3, 2004.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 51 to 63 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 18, the applicable fine range is $10,000 to $100,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that the defendant's entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw the defendant's plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 51 to 63 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $100,000, and the Government agrees not to appeal any fine that is greater than or equal to $10,000. The defendant also agrees not to appeal or bring a collateral challenge to any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that the defendant has accepted this Agreement and decided to plead guilty because the defendant is in fact guilty.

By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material (other than information establishing the factual innocence of the defendant), including *Jencks* Act material, material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if the defendant is not a citizen of the United States, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, the defendant recognizes that pleading guilty may have consequences

with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if the defendant's naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that the defendant has discussed the possible immigration consequences (including removal or denaturalization) of the defendant's guilty plea and conviction with defense counsel. The defendant affirms that the defendant wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw the defendant's guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge the defendant's conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the defendant's guilty plea and conviction.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By: _____
Rushmi Bhaskaran
Mollie Bracewell
Elizabeth Espinosa
Adam Hobson
Assistant United States Attorneys
(212) 637-2439 / 2218 / 2216 / 2484

APPROVED:

/s/ Michael Longyear
_____
Michael Longyear, Acting Co-Chief
Drew Skinner, Co-Chief
Violent and Organized Crime Unit

AGREED AND CONSENTED TO:

_____
Hasim Smith

2-27-23
_____
DATE

APPROVED:

_____
Nelson De La Cruz, Esq.
Attorney for Hasim Smith

2-28-2023
_____
DATE

2022.12.14

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     -v-                                    22-cr-352 (JSR)

HASIM SMITH et al.,                         ORDER

          Defendants.

JED S. RAKOFF, U.S.D.J.:

       Defendant Hasim Smith renews his motion for a modificati
bail status (from "home incarceration" -- which does not all c
home visits except in very narrow pre-approved circumstanc
"home detention," which would also allow him the opportunity
the home for employment purposes (pre-approved jobs

# EXHIBIT E



July 10, 2023

To whom this may concern,

     My name is Jazmine Warren, and I am the Business Office Manager and HR Director at The Brielle at Seaview. We are an assisted living community with a growing occupancy of about one hundred and twenty elderly residents. Our facility is their home, where we provide meals, activities and 24-hour care. I have been employed with the company for three years and five months.

     Hasim Smith has been employed with us since April of 2023. He is currently one of the four maintenance men and porters that we have working for our community. Although Hasim has only been here for a short period of time, he is by far one of the best employees we have on our team. Hasim is a phenomenal worker who is loved and adored by all our residents, our management directors, and his fellow co-workers. He has perfect attendance where he has never missed a day, is always on time, comes in on his days off for overtime and stays past his scheduled work hours every time we need his assistance. For the past three weeks Hasim has been working seven days straight with no off days. Hasim's dedication and work ethic is beyond outstanding. He completes every task assigned to him and assists the other maintenance men and porters with completing their tasks as well.

     All the residents grasped to Hasim very quickly and they always call on him to help them. He can complete a task as little as changing a light bulb and it makes their entire day. They always make it their business to report to his supervisor how helpful he is and how he takes care of their request in a very timely manner. He goes above and beyond to care for not only this facility, but most importantly the elderly residents who live here. I can't stress enough how genuine, gentle, and caring Hasim is with everything and everyone. Other supervisors in the other departments constantly discuss getting Hasim to join their teams that's how amazing he is. He is considered an all-around perfect employee. Whenever we need Hasim, he is always available. He is our go-to man. On behalf of myself and the entire Brielle community, we are very grateful and extremely lucky to have him as a part of our team.

If you have any questions, you can reach me at the contact information listed down below.

Sincerely,



Jazmine Warren
Business Office Manager
The Brielle at Seaview
(P) 929-256-3013
(F) 929-256-3036
www.njpine-seaview.com
www.TheBrielle.com

 

# EXHIBIT F



P.O. Box 2892, Church St. Station, New York, NY 10008-2892 | Tel: (347) 619-2080 | info@focusforwardproject.org

**Pamela Miller**
*Executive Director*

**BOARD OF
DIRECTORS**

Anne Patterson Finn
*Chairperson*

Justine Kentla

Alexandra Katz

Deirdre von Dornum

Amy Finzi

Kathleen Veteri

Alexandra Conlon

July 11, 2023

Hon. Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street, Court 14C
New York, NY 10007

Dear Judge Rakoff,

We, Hannah Jopling and Anastasia Velikovskaya, write in support of Hasim Smith, who is a graduate of The Focus Forward Project class. The class started on March 27, 2023 and ran through June 12, 2023. Hasim has completed all the requirements of the program and graduated on June 29, 2023. The Focus Forward Project is a nonprofit organization dedicated to providing an educational curriculum focused on reentry for individuals charged with federal crimes. The 12-week course is designed to provide both an intellectual and emotional outlet for students as they navigate the stress and uncertainty of the pretrial phase of their federal cases. The class meets once a week for two hours and fifteen minutes, and participants complete weekly reading, journal, and other homework assignments. The first half of each class is spent discussing and connecting with themes in the memoir, *A Long Way Gone*, by Ismael Beah, who is a survivor of the Sierra Leone civil war, while the second half of each class focuses on life skills, highlighting a different skill each week. By the end of the course, participants will have gained a variety of transferable skills and tools, including, but not limited to: a completed resume, interview skills, conflict resolution skills, public speaking skills, and the setting of both short and long-term goals. The goal of The Focus Forward Project is to provide participants with the confidence and practical tools to successfully move forward with their lives.

As Hasim expressed in his speech at graduation – he was selected as the class speaker – "When I decided to finally join the class, I had one agenda and one agenda only. That was simply to just pass time. After the first class with the group, my agenda was immediately in question. I became more curious than anything to just see what would happen next and how things would play out. I can say I've learned a lot from this program, and I've had such a great experience... I've gained my blessings and wins already and that's just being mentally prepared for what the future will hold, gaining a sense of direction, strength, knowledge, an open network for communication, growth, and connections but biggest of all genuine support."

Hasim has been an exceptional participant of his Focus Forward group. His classmates have benefitted from his presence each week. They appreciated his candid journal entries and his insights about the reading. Hasim was the first participant to volunteer to lead the book discussion during class, and he did a fantastic job. He actively encouraged his classmates to share their thoughts and validated their viewpoints. His classmates also learned from his suggestions about the week's skill, for example, how to prepare for a job interview, or his recommendation to watch tutorials on YouTube and get certifications to keep busy while on house arrest. They were inspired by his example and his determined focus to stay positive and work towards the future.

From the very beginning, we learned how much Hasim values his family. He told us "how tough it was growing up with 10 siblings and just your mom to support all of you." Her dedication to make sure "her children were fed, clean, and dressed" influences Hasim today as he tries to do the same for his two-year old daughter. Her arrival changed him. As he explained, "being a provider meant having to change completely." He admitted that being incarcerated and having to leave his daughter behind "stripped him of his young fatherhood," and he understood that family was everything to him. He has acknowledged his personal failure and a desire to become a better person, make his family and community proud, and to never repeat the same mistakes he made in his past.

Now Hasim works hard at two jobs and is always glad to get overtime work so that he can earn extra money to provide for his family. At one of his jobs, he is a maintenance worker at a residential center for the elderly. Even though his job only requires him to clean, he enjoys developing meaningful relationships with the residents. We have become aware of Hasim's kindness and dedication toward others when he told us with sadness about the deaths of two of the residents whom he saw every day at the facility. He even knew the flavor of ice cream one of them liked.

Hasim is a thoughtful, intelligent, and generous person who cares deeply about his family. He is motivated to continue to move forward in a positive direction. The other participants in the class have been enriched by Hasim's example. They have described Hasim as "an uplifting burst of energy we all need when we log on," "a natural leader," and a "kind person." As facilitators, we were also very glad to have Hasim in our class. We are grateful to have the opportunity to get to know such a dedicated and kind individual.

Your Honor, our intent is to provide you with our experience with Hasim. We appreciate the time Your Honor has taken to read our letter. If you have any questions, please feel free to contact our supervisors at the Focus Forward Project by phone or email: (347) 619-2080 or info@focusforwardproject.org.

Sincerely,

Hannah Jopling
Focus Forward Project
Class Facilitator

Anastasia Velikovskaya
Focus Forward Project
Class Facilitator

cc: Nelson De La Cruz, Esq.

# EXHIBIT G

**Eleanor Dixon**
**50 Willis Ave SI NY 10301**
**Eleanord93@gmail.com**

**To Judge Rakoff,**

Hi, my name is Eleanor, and I am Hasim's girlfriend we share a child together whose name is Ella Smith. I am writing this letter to express who Hasim is and how much he has been an impact to this family these last 9 months. Regardless of what you know of Hasim due to his criminal background that doesn't define who he is. We all make bad decisions in life, sometimes more than others but no one is perfect. I personally feel when Hasim became a father he changed, and I mean that in a good way. It's like he found his purpose in life. It sucks that this case happened because on paper it doesn't look like that but like I said you can't let someone's criminal record define who they really are. Hasim has completed parole early due to him following all the rules from curfew to passing the drug tests and not having any police contact. Hasim is a phenomenal father aka Super Dad, he is a provider, a caring and loving man. Hasim is the kind of person to give a stranger his last and be without because #1 that's just the person he is #2 because he feels whatever it is God put him in that position to do so and he will be blessed later. To know Hasim is to love him.

Before this indictment happened, I worked days and Hasim worked nights so we took turns on watching our child so we both can work. Parenting was smooth but on June 28 life went crashing and my help was taken from me and my child without a father. I work for the MTA as a train conductor so my hours fluctuate from day to day so it was hard to find a sitter, sometimes I would call out due to my sitter issue. But now fast forward to when you granted him bail (which I appreciate so much) I can work any shift my job gives me without any issues. Our child has gotten the chance to bond with her father on a different level now since she is older. When he left, she was only 11 months old she is now 2 years old. They are inseparable and it's a beautiful sight to see. Hasim is also a big help financially since he is working. Things were hard as a single mom juggling everything on my own but right now things are stable.

I understand Hasim's role in this case and understand with every action we make in life there are consequences. I am just asking maybe you can give my child a second chance at a 2-parent household and don't rip him away again. Every child deserves both parents and yes unfortunately things happen, but I am a strong believer of second chances in life. So, no matter the decision you make today I understand and still thankful for these 9 months you gave my child to be with her father.

Sincerly,
Elen Dp

# SCHOOL NAME

July 3, 2023

Good day Judge Rakoff,

Hope this letter finds you well, my name is Naholyta Levasseur. Before I begin, I would like to introduce myself with a little background. As mentioned before, My name is Naholyta Levasseur. I've been employed with the MTA for the past 12 years. I started as a Conductor in 2011, promoted to a Train Operator in 2014, promoted in 2016 to become a Train Dispatcher. In 2018 I was promoted to my most recent position as Transportation Instructor Supervisor. I have two children of my own my oldest is 19 who is currently serving in the US NAVY and my youngest 11 who is just a stress-free boy enjoying his summer and is about to begin the 7th grade.

I've known both Eleanor Dixon and Hasim Smith for the past eight (8) years, and the saving people come in our lives for three reasons: to help during difficult times, provide guidance and support and most off all to assist with physically emotionally, and spiritually this is all true.

My career with MTA was not a walk in the park going through a separation followed by a divorce I would not be able to get through the majority without the help of Eleanor and Hasim, I would not leave my children with just anyone and times where I would have to report for duty Hasim was my go-to. The proverbs "show me your friends and I will tell you who you are" does not define Hasim.

Hasim Smith – Friendly, self-motivated, outgoing, family orientated, goes above and beyond for his family and friends. To have Hasim around for the past nine (9) months has been nothing less than amazing. Although he is unable to pick up his daughter from school or drop her off, he helps with homework, and furthermore he helps financially.

Based on past events which involved Mr. Smith we do understand the severity, the role played and the consequences that will have to be faced, however if you are willing to give our friend, dad, uncle son another chance I believe this will be for the best.

I would like to pass his name off to my Senior Staff for different employment opportunities to experience a career and further his future, but I cannot do it alone. I will need your help. Grant him another chance. Not only am I asking for me but I am asking on behalf of my kids, her daughter and the family.

Please feel free to reach me by telephone or by email at Naholyta.Levasseur@gmail.com anytime.

Sincerely ,

Naholyta Levasseur

Kashayla J. Jackson

1950 Clove Road

Staten Island NY 10304

June 1, 2023

Hasim Smith

To: Honorable Judge Jed S. Rakoff

I, Kashayla Jackson am writing this letter to provide a character reference about Hasim Smith.
Who I known as a friend for 12 years now . Hasim is intelligent, respectful, good-hearted, and offers an
outstanding personality.

Hasim has been an upright person for our community, he has this affect of making others days brighter.
The 12 years I've known Hasim he has always been a helping hand. Hasim has taught me things of
knowledge, responsibility and wisdom as I grew up. He is appreciated! Anytime I needed help fixing my
car, needed support, even just someone to talk to I always can and will depend on him, because he has
always been there no matter the circumstances.

Hasim is gentle he stands tall on being a family man. He takes well care of his daughter and he's also very
hardworking . He is determined to give his daughter a great life while she's young . Hasim is one of the
most kind hearted people I know and he's so family oriented.

I could continue with descriptions of Hasim's many other good qualities- his work ethic, his energy, and
his creativeness to name three. Instead I would simply like to say how much I think of Hasim and how
strongly I recommend him for any task that requires  problem solving and a high level of commitment.

Thank you for your time. If you would like to ask more questions, I will be happy to accommodate you.
Simply give me a call or email me at 929-527-0782 and or KashaylaJackson@aol.com .

Sincerely,
*Kashayla J. Jackson*



Regal Sheepshead Bay 14 IMAX & RPX
3907 Shore Park Way
Brooklyn, N.Y. 11235

July 14, 2023

To whom it may concern:

I am pleased to write this character letter for Hasim Smith. I have known Hasim as a friend and a boss for twelve years. During the time that Hasim worked for me as an Usher at the Regal Staten Island 16 & RPX movie theatre. I found him to be a reliable and conscientious person. Hasim has displayed those traditional qualities of honesty, kindness, and generosity of spirit.

Hasim is an intelligent individual, who is willing to take the lead in situations when required. His excellent judgement on several occasions as a friend and employee has provided his loyal support at difficult times of our lives. I would recommend Hasim as a trustworthy person who can be relied upon when life gets difficult. He has proved to be a valued friend and colleague to those fortunate to spend time with him.

Hasim is certainly an earnest person who fully understands the importance of success and advancement within life. Under my supervision his customer service and communication skills were first rate. Most memorable was his willingness to engage with clientele, staff and the leadership team. He often provided solutions under challenging circumstances and mediated conflict tactfully. His willingness and persistence were both refreshing and revealing of Hasim's character. He has a genuine sympathy for the need of customers and his ability as a top tear employee spoke volumes about his representation of our organization.

His ability to think critically and to multitask different challenges within his everyday life as father, brother, son, and friend shows his reputable standards of achievement. Hasim has genuine charisma. His knowledge and personality will take him far. Hasim asked me if I would support him in his future endeavors, and indeed I wholeheartedly endorse him enthusiastically and wish him success.

If you feel you would like to contact me directly, I can be reached at (646) 456-6049 or by email Leonsaunders@optonline.net

Best Regards,

*Leon Saunders*
Leon Saunders
General Manager
Sheepshead Bay 14 IMAX & RPX
P: 718-615-1053

Stephanie Gallardo

77 Degroot pl 2

Staten Island, NY 10310

June 12,2023

To whom it may concern:

I have known Hasim Smith for five years. We were neighbors and became good friends. He always was there to give a help and hands.

During the time I have known Hasim Smith, he has been honest, trustworthy and someone you can rely on. He is always willing to go above and beyond what is expected of him. He is respectful in a personal and professional way that he gets along with everyone.

I can recall several occasions when Hasim Smith would stay late to complete a job for me. During the time together, he has often given a help and hand.

If any additional information is required concerning my association with Hasim Smith, please feel free to contact me. Thank you for your time and consideration.

Sincerely,

Stephanie Gallardo